

IN RE: MARY ANN JOHNSON

No. 04-52008

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, WILKSBORO DIVISION

**MEMORANDUM AND ORDER**

This matter came before the Court for hearing on June 9, 2005, upon Debtor's Motion For Determination of Application of Automatic Stay. Debtor, Mary Ann Johnson, was represented by Robert H. Gourley, Jr. and the North Carolina Department of State Treasurer, Retirement Division ("State") was represented by Special Deputy Attorney General John R. Corne, North Carolina Department of Justice.

### I. STATEMENT OF FACTS

In June 2002, the Debtor began receiving long-term disability benefits from the Disability Income Plan of North Carolina (the "Plan"), created to provide "equitable replacement income for eligible teachers and employees who become . . . disabled for the performance of their duty prior to retirement." N.C. GEN. STAT. § 135-100(b) (2005). The Plan is administered by the Retirement Systems Division of the North Carolina Department of State Treasurer (the "Retirement Division").

In January 2003, the Debtor also began to receive monthly payments from the Social Security Administration (SSA). Because the SSA found her eligible for benefits to have begun in October 2001, the SSA paid Debtor a lump sum in July 2003 to retroactively cover that period.

Under North Carolina law, Plan benefits are specifically reduced by any Social Security disability benefits received. N.C. GEN. STAT § 135-106(b). State law allows the Plan to recover such overpayments by the reduction of subsequent benefit payments. N.C. GEN. STAT § 135-9.

The Social Security payments made to the Debtor were discovered by the Retirement Division upon Debtor's filing of her Disability Benefit Recipient 2003 Statement of Income, which she signed on March 3, 2004. Language on that pre-printed form states that Plan benefits are reduced by benefit payments from federal agencies.

The Social Security payments received by the Debtor created a net overpayment from the Plan to the Debtor of $14,569.77. The Debtor was informed of this in April 2004. The Debtor currently owes the Plan the amount of $12,139.77.

To minimize financial hardship on the Debtor, the Retirement Division began deducting $243.00 per month from her benefit payments in June 2004, in order to recoup the overpayment over a sixty (60) month period. The standard Retirement Division policy is to recover overpayments over a thirty-six (36) month period.

In December 2004, the Debtor filed a Chapter 13 Bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina. Schedule F of the petition listed the Plan's overpayment of $14,569.77 as an outstanding claim. In fact, since six monthly deductions had already been applied to the debt, the outstanding balance at that time was $13,111.77.

On December 10, 2004, the Debtor requested by letter that the "wage garnishment" (*i.e.* monthly benefit deduction) be halted per Debtor's Chapter 13 filing. The Retirement Division responded to this by letter on December 28, 2004, explaining that future benefit payments are not property of the Debtor's estate, and that deductions to those benefits are permitted under the doctrine of recoupment. The Retirement Division also stated that the monthly deductions would continue, beginning (again) in March 2005. Three more monthly deductions have since been applied, in March, April, and May of 2005, for a current debt owed of $12,139.77. The

overpayment is being recouped by monthly deductions from the Debtor's ongoing disability benefit payments.

On May 13, 2005, the Debtor moved to halt the continuing deductions by filing a Motion for Determination of Application of Automatic Stay, claiming the deductions violate the automatic stay under 11 U.S.C. § 362(a) (2005).

## II. CONCLUSIONS OF LAW

### A. RECOUPMENT GENERALLY

Recoupment is an "equitable doctrine that allows a creditor to recover a pre-petition debt out of payments owed to the debtor post-petition." *City of Ft. Collins v. Gonzales (In re Gonzales)*, 298 B.R. 771, 773 (Bankr. D. Colo., 2003).

It is "well settled" that "a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment." *Reiter v. Cooper*, 507 U.S. 258, 265, 113 S. Ct. 1213, 1218, 122 L. Ed. 2d 604, 616 (1993).

The rationale for recoupment is that it would be inequitable to allow a debtor to "assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of 'recoupment')." *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir., 1984).

Because recoupment is a defense and not a claim or debt, it is not subject to the automatic stay or discharge. *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (Bankr. Fed. App., 2001). This distinguishes recoupment from setoff, which is subject to the automatic stay and discharge. *Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858, 860-861 (Bankr. D. Ohio, 2001). Setoff applies when the claim and counterclaim arise from different

transactions. *Id. See also In re: Dist. Mem'l Hospital of Southwestern N.C., Inc.*, 297 B.R. 451, 454 (Bankr. D.N.C., 2002) (generally describing the elements of the doctrine of recoupment).

## B. THE RIGHT OF EMPLOYEE DISABILITY PLANS TO RECOUP PRE-PETITION OVERPAYMENTS

A right to recoupment exists when the debtor's claim and creditor's counterclaim arise from the "same transaction." *Reiter*, 507 U.S. at 265, 113 S. Ct. at 1218, 122 L. Ed. 2d at 616.

In the context of employee disability plans, it is well-established that post-petition benefits may be reduced to recoup pre-petition overpayments, because the deductions and overpayments are seen as arising from the same transaction. *See, e.g., In re Delicruz*, 300 B.R. 669, 683-84 (Bankr. D. Mich., 2003). And indeed, many cases address the specific situation of an employee disability plan recouping overpayments caused by Social Security benefits. *See, e.g., id.; In re Sigman*, 270 B.R. at 862; *Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824, 826 (Bankr. D. Tex., 1995); *Aetna Life & Casualty Co. v. LaPierre (In re LaPierre)*, 180 B.R. 95, 100 (Bankr. D.S.C., 1994); *Brown v. General Motors Corp.*, 152 B.R. 935, 939 (D. Wis., 1993); *Harpe v. Mut. Ben. Life Ins. Co. (In re Harpe)*, 1990 Bankr. LEXIS 2996, 7-8 (Bankr. D. Ga., 1990); *In re Hiler*, 99 B.R. 238, 242 (Bankr. D.N.J., 1989).

Debtor argues that the doctrine of recoupment is applied differently to public disability plans and private disability plans. The Court disagrees.

Whether a disability plan is offered by private or public employer is not relevant to the issue of recoupment. *Thompson v. Board of Trustees of the Fairfax County Police Officers Retirement Sys. (In re Thompson)*, 182 B.R. 140, 147-48 (Bankr. D. Va., 1995) (noting the police disability plan in question was "no different from any other pension or retirement system created by a private employer," while denying recoupment on other grounds), *aff'd without opinion*, 92 F.3d 1182, 1182 (4th Cir., 1996). *See also, e.g., In re Jones*, 289 B.R. 188, 193 (Bankr. D. Fla.,

4

2002) (allowing a disability plan for state police to recoup an overpayment created by Department of Labor and Industries (L&I) benefits); *City of Ft. Collins v. Gonzales (In re Gonzales)*, 298 B.R. 771, 774 (Bankr. D. Colo., 2003) (allowing a city employee's workers' compensation disability plan to recoup overpayments caused by a second disability plan funded by the city for its employees). With respect to its employees, the State is an employer running a business and providing them with benefits, in a manner similar to that of private employers.

## C. THE CONTRACTUAL NATURE OF THE DISABILITY PLAN

Debtor next argues, citing *Lee v. Schweiker*, that the Plan is a social welfare benefit, and that therefore recoupment is not applicable. Again, the Court disagrees.

As recoupment is a contract doctrine, it does not apply when the claims and counterclaims do not arise from a contract. *See Schweicker*, 739 F.2d at 876. Notably, recoupment does not apply to social welfare benefits available to the general public, such as Social Security, which are deemed to be non-contractual in nature. *Id.* (denying recoupment to the Social Security Administration because its benefits were found to be "statutory 'entitlements' rather than contractual rights").

The Disability Income Plan of North Carolina (again, the "Plan") is not a social welfare plan, but simply a benefit arising out of the Debtor's employment contract with the State. A State employee is eligible to receive long-term disability benefits upon completing five or more years of service. N.C. Gen. Stat. § 135-106(a) (effective until August 1, 2005). After having five years of service, a State employee may receive benefits upon becoming disabled.

The North Carolina Court of Appeals has unequivocally declared the Plan to be contractual in nature. *Faulkenbury v. Teachers' & State Employees' Retirement System*, 108 N.C. App. 357, 370, 424 S.E.2d 420, 426 (N.C. Ct. App., 1993) (holding the statutory provisions of

the Plan to be part of a worker's employment contract with the State, and a statutory revision to the Plan's disability calculation to be an unconstitutional impairment of that contract), *aff'd per curiam*, 335 N.C. 158, 160, 436 S.E.2d 821, 822 (1993), *cert. denied* 351 N.C. 102, 102, 540 S.E.2d 358, 359 (1999). Though the Plan may appear non-contractual because it is created and maintained by statute, the Court in *Faulkenbury* reasoned it is contractual because a binding part of an employee's compensation package. *Id.*

In fact, only a few jurisdictions still adhere to the traditional common law rule that such benefit plans are "gratuities" creating no automatic contractual rights. *Simpson v. North Carolina Local Government Employees' Retirement System*, 88 N.C. App. 218, 223-24 (N.C. Ct. App., 1987) (holding a similar North Carolina public employee retirement plan, also created by statute, to be contractual in nature, since part of an employee's "bargained for" compensation), *aff'd without opinion*, 323 N.C. 362 (1988).

Though no published case is precisely on point in applying the contractual nature of the Plan to recoupment, it would be neither equitable nor logically consistent to hold the Plan to be a contract when it benefits the employee, and not a contract when it benefits the employer. In a sense, the equitable argument here is analogous to the rationale for recoupment itself, that "[a] debtor can not assume portions of a contract she likes . . . and reject other portions". *In re LaPierre*, 180 B.R. at 100.

In *Faulkenbury*, holding the Plan to be a contract disallowed unilateral changes to disability calculations, and this was beneficial to employees. Here, holding the Plan to be a contract would benefit the employer. This give and take is equitable and consistent, and in any event no published case has held this Plan to be non-contractual for purposes of recoupment.

## D. THE REQUISITE MATCHING OF PLANS, AND DISABILITY EVENTS

"[O]nly apples can be recouped against apples, not apples against oranges. Apples may be set off against oranges, but this takes the matter out of the nature of recoupment by affording a right to payment instead of simply a right to reduce a debt." *In re Delicruz*, 300 B.R. at 683.

As applied to employee disability plans, this principle means recoupment is denied when overpayments toward one disability event are later deducted from payments toward a separate and distinct disability event. *See, e.g., In re Madigan*, 270 B.R. at 759 (holding that recoupment from one period of disability may not be sought from overpayments toward a prior and distinct period of disability, when the two periods are separated by two years of active work on the job).

It also means recoupment is denied when overpayments to a plan are later deducted from any source other than the same plan. *See, e.g., In re Delicruz*, 300 B.R. at 683 (allowing an employee disability plan to recoup disability overpayments from subsequent disability payments, but not from wages); *In re Thompson*, 182 B.R. at 147-48 (denying recoupment by a police disability plan when the deductions were applied to the beneficiary's retirement plan rather than his disability plan).

Here, the overpayments and deductions have occurred within the same Plan, not different plans as in *Thompson*, and pertain to the same disability event, not different ones as in *Madigan*.

## E. PERIODIC MEDICAL EXAMINATIONS

Finally, the Debtor argues that *Thompson* dictates the conclusion that medical examinations of Plan beneficiaries automatically preclude the application of the doctrine of recoupment in this case. The Court does not find this argument compelling.

N.C. Gen. Stat. § 135-106(a) provides:

7

> The Board of Trustees [of the Plan] may require each beneficiary who becomes eligible to receive a long-term disability benefit to have an annual medical examination for the first five years and thereafter once every three years after the commencement of benefits under this section.

The obvious intent of this provision is to permit annual medical examinations of beneficiaries to confirm their continuing eligibility for Plan disability payments and, thereby, to conserve Plan assets for future disabled State employees.

The State has legitimate business and fiscal reasons that necessitate periodic medical examinations. Given the State's business and fiscal reasons, the Court declines to apply an inflexible rule that would bar recoupment of overpayments based solely on a required medical examination. To hold otherwise would provide a windfall to beneficiaries simply because they were required to submit to a medical examination.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Debtor's Motion For Determination Of Application Of Automatic Stay is **DENIED** and that the State may continue to recoup its overpayment to the Debtor from future Plan benefits until fully recovered.

This the 24th day of June, 2005.

J. Craig Whitley
United States Bankruptcy Judge